UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-cv-095 |
| ) | |
| TILDEN MINING COMPANY L.C., ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

Plaintiff, the United States of America, at the request of and on behalf of the

Administrator of the United States Environmental Protection Agency ("EPA"), files this

complaint and alleges as follows:

## NATURE OF ACTION

1.     This is a civil action pursuant to Section 113(b) of the Clean Air Act ("CAA"),

42 U.S.C. § 7413(b), against Tilden Mining Company, L.C. ("Defendant") for civil penalties and

injunctive relief as a result of violations of the following: (1) provisions of the National Emission

Standards for Hazardous Air Pollutants for the Taconite and Iron Ore Processing Industry,

40 C.F.R. Part 63, Subpart RRRRR; and (2) the State Implementation Plan adopted by the State

of Michigan and approved by EPA pursuant to CAA Section 110, 42 U.S.C. § 7410 ("Michigan

SIP").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331, 1345 and 1355; and CAA Section 113(b), 42 U.S.C. § 7413(b).

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and CAA Section 113(b), 42 U.S.C. § 7413(b), because the Defendant resides and is found in this District and because the alleged violations occurred within this District.

<u>NOTICE</u>

4.      Pursuant to CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), EPA notified Defendant and the State of Michigan of the violations of the Michigan SIP alleged in this Complaint more than 30 days prior to its filing. EPA issued a Notice of Violation and Findings of Violation ("NOV/FOV") to Defendant on February 21, 2014.

5.      The 30-day period established in CAA Section 113(b), 42 U.S.C. § 7413(b), between the notice provided by the United States to the Michigan Department of Environmental Quality ("MDEQ") and the commencement of this civil action has elapsed.

<u>AUTHORITY</u>

6.      The United States Department of Justice has authority to bring this action on behalf of the Administrator of EPA under 28 U.S.C. §§ 516 and 519 and CAA Section 305(a), 42 U.S.C. § 7605(a).

<u>DEFENDANT</u>

7.      Defendant Tilden Mining Company L.C. ("Defendant" or "Tilden") is a limited liability company organized under the laws of the State of Michigan and has its principal place of business in Ishpeming, Marquette County, Michigan.

8.      Tilden owns and operates a taconite mine and processing plant at 1 Tilden Mine Road, Ishpeming, Michigan ("Tilden Mine"). The Tilden Mine includes the following emission sources relevant to this Complaint:  four electrostatic precipitators ("ESPs"), two on each of two

2

indurating furnaces; and various small wet scrubbers designed to control particulates from material-handling operations.

9.     Defendant is a "person" within the meaning of CAA Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e).

### STATUTORY AND REGULATORY BACKGROUND

10.     One of the purposes of the CAA is to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### Michigan SIP and Title V Operating Permit

11.     Under CAA Section 110, 42 U.S.C. § 7410, each state is required to adopt and submit to EPA for approval a SIP that provides for the implementation, maintenance, and enforcement of National Ambient Air Quality Standards established under CAA Section 109. Upon EPA's approval, SIP provisions become part of the "applicable implementation plan" for the state within the meaning of CAA Section 302(q), 42 U.S.C. § 7602(q).

12.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, the State of Michigan adopted and submitted to EPA various regulations that were subsequently approved by EPA and which, taken together, constitute the SIP for the State of Michigan. *See* 40 C.F.R. Part 52, Subpart X ("Michigan SIP Rules").

13.     EPA approved Michigan Rules 301 through 374(1), Mich. Admin. Code R. 336.1301-336.1374(1) (1999), as the Michigan SIP Rules for particulate matter, effective July 13, 1992. 57 Fed. Reg. 24,752 (June 11, 1992). The Michigan SIP Rules for particulate matter limit the emission of particulate matter from various processes or process equipment based on

3

the density of emissions as measured by the emission's opacity (the degree to which emissions reduce the transmission of light and obscure the view of an object in the background).

14.     Specifically, Michigan SIP Rule 301(1), Mich. Admin. Code R. 336.1301(1), the general particulate matter emission limit in the Michigan SIP Rules, provides that:

> a person shall not cause or permit to be discharged into the outer air from a process or process equipment a visible emission of a density greater than the most stringent of the following:  (a) a 6-minute average of 20% opacity, except for one 6-minute average per hour of not more than 27% opacity; (b) a limit specified by an applicable federal new source performance standard; (c) a limit specified as a condition of a permit to install or permit to operate.

15.     The ESPs at the Tilden Mine are "process equipment" as that term is defined in Mich. Admin. Code R. 336.1116(r).

16.     CAA Sections 501 through 507 ("Title V"), 42 U.S.C. §§ 7661 7661f, establish an operating permit program for certain air pollution sources, including "major sources."  Title V permits contain all applicable emission limitations and standards to ensure that all "applicable requirements" for compliance with the CAA are collected in one place.

17.     CAA Section 502(a), 42 U.S.C. § 7661a(a), makes it unlawful for any person to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

18.     A "major source" under Title V includes, *inter alia*, any stationary source that is a "major source" as defined in Section 302(j) of the CAA, 42 U.S.C. §§ 7602(j); 7661(2). *See also* 40 C.F.R. § 70.2. Among other things, "major sources" include sources that directly emit, or have the potential to emit, 100 tons per year or more of any criteria pollutant, 10 tons per year or

more of any single hazardous air pollutant, or 25 tons per year or more of any combined

hazardous air pollutants.

19.     Tilden's processing plant is a "major source" under Title V and can only operate

in compliance with a permit issued by MDEQ.

20.     Pursuant to 40 C.F.R. Part 70, EPA granted approval to Michigan's Title V

operating permit program, effective November 30, 2001. 66 Fed. Reg. 62,949 (Dec. 4, 2001).

The Michigan regulations governing the Title V permit program, also known as the "renewable

operating permit program," are codified at Michigan Rules 210 through 219, Mich. Admin. Code

R. 336.1210 through R. 336.1219.

21.     On July 1, 2008, MDEQ issued a renewable operating permit to Tilden's

processing plant, designated as Permit No. MI-ROP-B4885-2008. Defendant's air permit

requires a performance test for each group of pollution control equipment and requires that each

piece of pollution control equipment comply with parametric limits established by the

performance tests.

22.     Defendant's air permit for the Tilden Mine does not contain a separate opacity

limit and there is no new source performance standard for the taconite industry. Thus, the most

stringent opacity limit applicable to Defendant's Tilden Mine is the 6-minute average of 20%

opacity, except for one 6-minute average per hour of not more than 27% opacity, set forth in

Michigan SIP R. 336.1301(1).

National Emission Standards for Hazardous Air Pollutants

23.     The CAA requires EPA to promulgate regulations that establish national emission

standards for categories of major sources and area sources of listed hazardous air pollutants

5

("HAPs"). 42 U.S.C. § 7412(d). These standards are known as the National Emissions Standards

for Hazardous Air Pollutants ("NESHAPs").

24.    A "major source" of HAPs is any stationary source that emits or has the potential

to emit any single HAP at a rate of 10 tons or more per year, or any combination of HAPs at a

rate of 25 tons or more per year. 42 U.S.C. § 7412(a).

25.    Defendant's taconite processing plant is a "major source" of HAPs as that term is

defined at Section 112(a)(1) of the CAA, 42 U.S.C. § 7412(a)(1).

26.    Defendant's taconite processing plant is a "stationary source" as that term is

defined at Section 111(a) of the CAA, 42 U.S.C. § 7411(a). *See* 42 U.S.C. § 7412(a)(3).

27.    Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA promulgated

National Emissions Standards for Hazardous Air Pollutants for the Taconite Iron Ore Processing

Industry, 40 C.F.R. Part 63, Subpart RRRRR ("Taconite MACT"), which applies to the owners

and operators of taconite iron ore processing plants that are a major source of HAPs.

28.    The Taconite MACT applies to each new and existing affected source within a

taconite iron ore processing plant, including material handling processes, indurating furnaces and

their associated pollution control equipment. 40 C.F.R. § 63.9582.

29.    Tilden is an "owner" or "operator" as that term is defined in Section 112(a)(9),

42 U.S.C. § 7412(a)(9).

30.    The Taconite MACT establishes emission limits for ESPs. 40 C.F.R.

§ 63.9590(b)(3). Each ESP must, in pertinent part, maintain the 6-minute average opacity of

emissions exiting the control device stack at or below the level established during initial

performance testing. *Id.*

6

31.     This 6-minute average opacity must be maintained at or below the maximum level established during initial or subsequent performance testing. 40 C.F.R. § 63.9634(g)(1).

32.     Where the 6-minute average opacity exceeds that established during performance testing, certain corrective action procedures and notice requirements must be followed. 40 C.F.R. § 63.9634(g)(1)(iii).

33.     The Taconite MACT also establishes emissions limits for small wet scrubbers. 40 C.F.R. § 63.9590(b)(1). The daily average pressure drop and daily average water flow rate established during initial performance testing establishes the minimum daily average that the facility must meet. *Id.*

34.     Each small wet scrubber must show continuous compliance by, in pertinent part, maintaining the daily average pressure drop and water flow rates established during initial or subsequent performance testing. 40 C.F.R. § 63.9634(e)(1).

35.     If the daily average pressure drop and water flow rates fall below that established during performance testing, certain corrective action procedures and notice requirements must be followed. 40 C.F.R. § 63.9634(e)(4).

<u>Enforcement of the CAA</u>

36.     CAA Section 113(a)(1) and (a)(3), 42 U.S.C. § 7413(a)(1) and (a)(3), authorizes EPA to bring a civil action if the Administrator of EPA finds that any person is in violation of, *inter alia*, any requirement or prohibition of an applicable SIP, any regulations promulgated under CAA Section 112, 42 U.S.C. § 7412, or any permit issued under Title V of the CAA, 42 U.S.C. §§ 7661-7661f.

37.     In accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), operating permits issued under an approved state program are federally enforceable.

38.     CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess a civil penalty, and to award any other appropriate relief for each violation.

39.     CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes civil penalties of up to $25,000 per day for each violation of the CAA. The Debt Collection Improvement Act, 31 U.S.C. §§ 3701 *et seq.*, requires EPA to periodically adjust its civil penalties for inflation. Pursuant to 40 C.F.R. Part 19, the United States may seek civil penalties of up to $37,500 per day for each such violation occurring on or after January 13, 2009 through November 2, 2015, and up to $95,284 per day for each such violation occurring on or after November 3, 2015.

## FIRST CLAIM FOR RELIEF
(Title V Permit and Michigan SIP Violations at Electrostatic Precipitators)

40.     Plaintiff realleges and incorporates by reference Paragraphs 1-39 as if fully set forth herein.

41.     On numerous occasions between January 1, 2009 and December 31, 2017, including but not limited to those dates and times listed in the NOV/FOV issued by EPA on February 21, 2014, and listed in its subsequent deviation reports, Defendant caused or permitted to be discharged into the outer air visible emissions of particulate matter from the ESP stacks associated with an indurating furnace to exceed 20% opacity (excluding one 6-minute average per hour of not more than 27% opacity) in violation of Michigan SIP Rule 301(1) and its Title V permit.

8

42.     Unless restrained by an order of this Court, Defendant's violations of its Title V permit, the Michigan SIP and the CAA, as set forth in this Claim for Relief, are likely to continue.

43.     Defendant's violations, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation occurring on or before November 2, 2015 and up to $95,284 per day for each violation occurring on or after November 3, 2015.

## SECOND CLAIM FOR RELIEF
### (Taconite MACT Violations at Electrostatic Precipitators)

44.     Plaintiff realleges and incorporates by reference Paragraphs 1-39 as if fully set forth herein.

45.     On at least six occasions between March 14, 2009 and March 14, 2013, including but not limited to those dates and times listed in the NOV/FOV issued by EPA on February 21, 2014, Defendant failed to maintain the 6-minute average opacity of particulate matter emissions exiting its ESPs at or below the level established during initial performance testing for more than thirty days without successfully completing corrective action or a performance test to establish new limits, in violation of 40 C.F.R. §§ 63.9590(b)(3), 63,9634(g)(1), 63.9634(j)(3), and 63.6(e)(1)(i).

46.     Defendant's violations of the Taconite MACT and the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

### THIRD CLAIM FOR RELIEF
(Taconite MACT Violations at Small Wet Scrubbers)

47.     Plaintiff realleges and incorporates by reference Paragraphs 1-39 as if fully set forth herein.

48.     On at least 125 occasions between January 1, 2009 and June 30, 2013, including but not limited to those dates and times listed in the NOV/FOV issued by EPA on February 21, 2014, Defendant was aware of deviations in the water flow and/or pressure drop rates of its small wet scrubbers, but failed to implement corrective action within thirty days, in violation of 40 C.F.R. §§ 63.9590(b)(1), 63.9634(e)(1), 63.9634(j)(3), and 63.6(e)(1)(i). Additionally, for each occasion of uncorrected water flow or pressure drop deviation, Defendant failed to (1) submit to EPA's Administrator a written report detailing the deviation, as required by 40 C.F.R. § 63.9634(j)(4); and (2) conduct performance tests, as required by 40 C.F.R. § 63.9634(j)(3).

49.     Defendant's violations of the Taconite MACT and the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $37,500 per day for each violation.

### PRAYER FOR RELIEF

WHEREFORE, based upon all of the allegations set forth above, Plaintiff respectfully requests that this Court:

A.      Permanently enjoin Defendant from further violations of the Clean Air Act and applicable requirements established thereunder, including its Title V permit, the Michigan SIP Rules described above, and the Taconite MACT;

B.     Require Defendant to comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with the Clean Air Act and applicable requirements established thereunder, including the Michigan SIP Rules described above and the Taconite MACT;

C.     Assess civil penalties against Defendant for violations of applicable provisions of the Clean Air Act, as well as the implementing regulations and permits issued thereunder, of up to $37,500 per day for each such violation occurring on or after January 13, 2009 through November 2, 2015; and up to $95,284 per day for each such violation occurring on or after November 3, 2015;

D.     Enter judgment in favor of Plaintiff and against Defendant;

E.     Award the Plaintiff its costs and disbursements for this action; and

F.     Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA

BRUCE S. GELBER
Deputy Assistant Attorney General
Environmental and Natural Resources Division
U.S. Department of Justice


 s/ Michael J. Zoeller
MICHAEL J. ZOELLER
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station, PO Box 7611
Washington, DC  20044

11

Tel: (202) 305-1478
Fax: (202) 616-6584
Email:  michael.zoeller@usdoj.gov


ANDREW BYERLY BIRGE
United States Attorney
Western District of Michigan



 s/ Adam Townshend
ADAM TOWNSHEND
Assistant United States Attorney
Western District of Michigan
330 Ionia Avenue, NW, Suite 501
Grand Rapids, MI  49503
Tel:  (616) 808-2130
Fax:  (616) 456-2408
Email:  adam.townshend@usdoj.gov

OF COUNSEL:
JAMES MORRIS
Associate Regional Counsel
U.S. Environmental Protection
Agency-Region 5
77 West Jackson Blvd.
Chicago, IL 60604-3507